IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

THOMAS EUGENE CARLSON, JR.,

      Plaintiff,

v.                                    No. 05-1025 B/An

RICKY LUNSFORD, Sheriff, et al.,

      Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
_____

      The Plaintiff, Thomas Eugene Carlson, has sued the Defendants, Ricky Lunsford, Tim
Meggs, and David Bunn, alleging that they violated his constitutional right to due process by using
excessive force during and immediately after a high-speed car chase.  Before the Court is the
Defendants' motion to dismiss under Rule 12, Fed. R. Civ. P., or in the alternative for summary
judgment pursuant to Rule 56, Fed. R. Civ. P.[1]  The Plaintiff has responded, and this motion is now

---

      [1]The Court notes the Defendants have attached affidavits and other documents to their
motion.  Rule 12 of the Federal Rules of Civil Procedure provides,

> [i]f, on a motion asserting the defense numbered (6) to dismiss for
> failure of the pleading to state a claim upon which relief can be
> granted, matters outside the pleading are presented to and not
> excluded by the court, the motion shall be treated as one for summary
> judgment and disposed of as provided in Rule 56, and all parties shall
> be given reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  Because the Defendants have attached matters outside the pleadings, the
Court is constrained to consider the motion as provided for by Rule 56.  See Fed. R. Civ. P. 56.

ripe for disposition.  For the reasons set forth below, the Defendants' motion is GRANTED in part and DENIED in part.

BACKGROUND

The following facts are undisputed unless noted. On February 4, 2004, Defendants Ricky Lunsford, the Sheriff of Henderson County, Tennessee, Tim Meggs, an investigator for the Carroll County, Tennessee Sheriff's Department, and David Bunn, also an investigator for the Carroll County Sheriff's Department, "were conducting counter-narcotic activities near Exit 93 of Interstate 40." (Defs.' Statement of Undisputed Material Facts ¶ 1).[2]   An officer assisting the Defendants noticed the Plaintiff get into his car which was parked at a convenience store located near exit 93. (Id., ¶ 4).[3]

Carlson, who was suspected of being involved in the transportation of methamphetamine, had outstanding warrants from Carroll County for felony evading arrest and reckless endangerment. (Id., ¶ 3). An officer working with the Defendants, who had knowledge of the outstanding warrants, stopped Carlson's vehicle, but as he approached, the Plaintiff  "shined a bright spotlight in the officer's face . . . ." (Id., ¶¶ 5-6).  The Plaintiff then drove away and entered Interstate 40.  (Id., ¶ 7).  The Defendants and other law enforcement officers began chasing the Plaintiff, who led the

---

[2]The Court notes that the Plaintiff has failed to admit or deny the list of undisputed facts submitted by the Defendants in support of their dispositive motion.  Therefore, for purposes of ruling on the Defendants' motion, the Court will assume Carlson does not dispute these facts.  See L.R. 7.2(d)(3), Local Rules of the U.S. Dist. Court for the West. Dist. Tenn.

[3]The officer assisting was one of a number of "law enforcement officers from the Henderson, Carroll, and Madison County Sheriffs' Departments conduct[ing] counter-narcotic activity . . . ." (Defs.' Mot. Summ. J. at 1).

2

officers on a high-speed chase for ten miles at speeds in excess of ninety miles-per-hour.[4]  (Id., ¶¶
8-9).  During the chase, Carlson continued to shine the light through his rear windshield at the
officers in pursuit.  (Id., ¶ 10).  Lunsford drove the lead pursuit vehicle and claimed to observe
"flashes emanating from Plaintiff's vehicle that appeared to be gunshots."[5]  (Id., ¶¶ 11-12).  The
Sheriff then began to fire his weapon at Carlson's vehicle, striking it multiple times but failing to
hit the Plaintiff.  (Id., ¶¶ 13-14).  As a result, the Plaintiff pulled his vehicle over to the side of the
road but not before throwing "objects out of the driver's side window of his vehicle . . . ."  (Id., ¶
15).  After he stopped, the Defendants pulled Carlson from his vehicle through the driver's side
window, placed him on the ground, and handcuffed him.  (Id., ¶¶ 16, 19).  The Plaintiff contends that
Investigators Meggs and Bunn intentionally dropped him on his head, causing injury thereto.  (Pl.'s
Resp. to Defs.' Mot. Summ. J. at 10).  However, Meggs and Bunn dispute that they intentionally
injured Carlson while removing him from his vehicle.  (Defs' Statement of Undisputed Material
Facts ¶ 20).   Subsequent testing determined that Carlson was under the influence of
methamphetamine during the chase, and a search of the area revealed that the object the Plaintiff
threw out his window was a quantity of that substance.  (Id., ¶¶ 3, 16).  During transport to the

---

[4]The Court takes judicial notice that the speed limit on Interstate 40 in Tennessee is
seventy (70) miles-per-hour.  See Fed. R. Evid. 201(b), (c).

[5]The Plaintiff denies firing at Sheriff Lunsford, and claims that a later investigation by
the Tennessee Bureau of Investigation ("TBI") stated that "[n]o evidence was recovered to
support Sheriff Lunsford's contention that Tommy Carlson fired a weapon at him during the
pursuit."  (Pl.s Resp. to Defs.' Mot. Summ. J., ex. III, at 33); see also (id. at 5).  The Court notes
that the Defendants have not objected to the Plaintiff's submission of the TBI report as an exhibit
to his response.  "If a party fails to object before the district court to the affidavits or evidentiary
materials submitted by the other party in support of its position on summary judgment, any
objections to the district court's consideration of such materials are deemed to have been waived
. . . ."  Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994).

Carroll County jail, Carlson complained that his leg hurt but did not mention an injury to his head.[6] (<u>Id.</u>, ¶¶ 24-25). Finally, neither Sheriff Lunsford nor Investigators Meggs or Bunn had further contact with Carlson after the Plaintiff was transported to the Carroll County jail. (<u>Id.</u>, ¶ 26).

Based on these events, the Plaintiff filed suit against the Defendants under 42 U.S.C. § 1983 alleging that they violated his federal constitutional rights by using deadly force to stop his vehicle, by utilizing excessive force to remove him from it, and by denying him proper medical care. Carlson also alleged various state constitutional law violations and tort law claims.

<u>STANDARD OF REVIEW</u>

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

Fed. R. Civ. P. 56 (c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.</u>, 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct.

---

[6]Carlson alleged that his "head injury was clearly visible to the Defendants as is shown by . . . pictures and . . . booking report done by jailer . . . ." (Pl.'s Resp. to Defs.' Mot. Summ. J. at 10); <u>see also</u> (<u>id.</u>, ex. III (booking photographs of Carlson from the Carroll County Sheriff's Department)).

at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

Lunsford contends that he is entitled to summary judgment because his firing at the Plaintiff's vehicle did not violate a constitutionally protected right of Carlson's but that even if it did, he is entitled to qualified immunity.  Meggs and Bunn argue that their manner of removal of the Plaintiff from his vehicle did not infringe any constitutional right but that if it did, they are also shielded from liability by qualified immunity.

1. Section 1983 Generally.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983.  In order to prevail

on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

2.  Individual Liability Under Section 1983

The Defendants seek summary judgment as to the Plaintiff's claims against them in their individual capacities based upon the use of excessive force for firing into his vehicle and for injuring his head while removing him from the vehicle. In an excessive force claim pursuant to the Fourth Amendment, the plaintiff must show that the defendant's actions were, under the circumstances, objectively unreasonable. See Scott v. Clay County, Tenn., 205 F.3d 867, 876 (6th Cir. 2000), cert. denied, 531 U.S. 874, 121 S. Ct. 179 (2000).

In defining the boundaries of Fourth Amendment reasonableness, the Supreme Court has stated as follows:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . .  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .

> . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,

6

> violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them . . . .

Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1871-72 (1989) (internal citations and quotations omitted).

A.      Sheriff Lunsford

Lunsford contends he is entitled to judgment because his firing at the Plaintiff without striking him failed to implicate the Fourth Amendment.  Even if there was a constitutional claim involved, the Sheriff maintains he is shielded by qualified immunity.

As the Defendant correctly points out, the Fourth Amendment is only involved when an officer of the state has "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."  Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968).  However, when a suspect, such as Carlson, fails to heed a law enforcement officer's "show of authority," no Fourth Amendment seizure occurs. See California v. Hodari D., 499 U.S. 621, 629, 111 S. Ct. 1547, 1552 (1991) (holding that assuming the officer's "pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was [later] tackled").

With regard to the use of deadly force to apprehend a fleeing suspect, the Supreme Court has stated that to "seize an unarmed, nondangerous suspect by shooting him dead" violates the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694 (1985).  However, "'[w]here the

officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.'" Brosseau v. Haugen, 543 U.S. 194, 197-98, 125 S. Ct. 596 (2004) (quoting Garner, 471 U.S. at 11, 105 S. Ct. 1694).

Lunsford relies upon the decisions in Cameron v. City of Pontiac, 813 F.2d 782, 785 (6th Cir. 1987), and Adams v. City of Auburn Hills, 336 F.3d 515, 519 (6th Cir. 2003), in support of his position that the Fourth Amendment is inapplicable to the instant facts.  In Cameron, two law enforcement officers responded to a burglary call whereupon they "ran to the rear of the house" and "observed two black males . . . ." 813 F.2d at 783.  The officers identified themselves and ordered the suspects to halt.  Id. at 784.  The two men ignored the order, prompting the officers to each fire two shots in their direction.  Id.  Although one of the suspects surrendered, Cameron continued to elude the officers.  Id.  One of the policemen gave chase and fired three more shots at Cameron, who "scaled the right-of-way fence onto the M-59 high speed expressway where he was struck and killed by a motor vehicle."  Id.  In analyzing the section 1983 claim by Cameron's estate based upon excessive force, the Sixth Circuit concluded that "the undisputed facts disclosed that Cameron was not seized within the meaning of the Fourth Amendment."  Id. at 784.  The court explained its analysis by finding that

> Cameron elected to flee, not to be restrained.  The officers' show of authority by firing their weapons, while designed to apprehend Cameron, did not stop or in any way restrain him. . . .  Cameron's freedom of movement was restrained only because he killed himself by electing to run onto a heavily traveled, high speed freeway.
> The use of deadly force standing alone does not constitute a seizure, and absent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment.

8

Id. at 785 (emphasis added).

Similarly, in Adams, officers of the defendant city responded to a domestic dispute at a motel. 336 F.3d at 516. The plaintiff, Adams, had rented a room at the motel and parked his car, a Ford Taurus, nearby. Id. His ex-girlfriend, who suspected Adams of being at the motel with another woman, spotted the vehicle, which was actually hers and which she had agreed to sell to him. Id. Distraught, she broke the window of the room near where the car was located, although Adams was not inside. Id. When the police arrived, the woman told them she wanted the keys to her car returned. Id. Thereafter, one of the officers, noticing Adams attempting to leave in the Taurus, stopped him. Id. "Adams asked [the officer] if he had broken any law and the officer replied that he had not. Adams then told [the officer] that . . . he was leaving." Id. at 517. The policeman ordered Adams to exit the car. Id. When Adams refused and drove away, the officer fired his weapon "at the Taurus's left rear wheel and mud flap." Id. However, Adams was able to drive to another location but later surrendered to the police. Id.

In analyzing Adams' section 1983 claim for excessive force, the court stated,

> In this case, Officer Backstrom's firing at the automobile did not impair Adams's movement. Adams was not hit by Officer Backstrom's bullets and was able to leave the scene unharmed despite Backstrom's use of his firearm. Even though the tire of the Taurus was hit, it appears that the car still was operable and Adams reached his destination, his mother's house.
>
> Hence, Adams never was seized, and our holding that no seizure occurred makes the discussion of the reasonableness of Backstrom's conduct unnecessary. Because the Fourth Amendment is not implicated, Adams has not alleged a constitutional violation to support a § 1983 claim. Without an underlying constitutional violation, the question of whether Backstrom is entitled to qualified immunity is moot.

Id. at 520 (emphasis added).

9

The Court concludes the Defendants misapprehend the applicability of Cameron and Adams to the facts of this case.  Here, unlike the officers' use of force in those cases, Lunsford's gunfire resulted in the immediate seizure of Carlson as the Plaintiff stopped his car and surrendered on the interstate.  Thus, under that scenario the Fourth Amendment is implicated.  See Brower v. County of Inyo, 489 U.S. 593, 596, 109 S. Ct. 1378 (1989) (stating that a Fourth Amendment seizure occurs when an officer terminates a suspect's freedom through means intentionally applied); Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994) ("Hodari suggests that when law enforcement officers shoot at a fleeing suspect, a 'seizure' occurs only if the shot strikes the fleeing person or if the shot causes the fleeing person to submit to this show of authority."); Palmer v. Williamson, 717 F. Supp. 1218, 1223 (W.D. Tex. 1989) (holding that if an officer means to stop the plaintiff by firing his gun at the plaintiff's car and the car is in fact stopped, then a Fourth Amendment seizure has occurred).

As a shield to a section 1983 action, a law enforcement officer may claim protection from liability through qualified immunity.  Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied, (Nov. 21, 1994).  In Saucier v. Katz, the Supreme Court articulated a two step test to determine whether qualified immunity is appropriate. 533 U.S. 194, 200-01, 121 S. Ct. 2151, 2155-56; see also Solomon v. Auburn Hills

Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01, 121 S. Ct. at 2155-56. If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. at 201, 121 S. Ct. at 2156. As to the second step, a court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, . . . without regard to [his] underlying intent or motivations." Solomon, 389 F.3d at 173 (citations and emphasis omitted). In order to support a finding that an officer is entitled to qualified immunity, it must be concluded that his actions were objectively reasonable. Id. at 174.

In this case, Lunsford argues that he is entitled to qualified immunity because his shooting into the victim's car was justified due to his belief that Lunsford had fired at him. The Defendant also contends his seizure of Carlson was reasonable based upon the Plaintiff's actions of leading police on a high-speed chase while shining a flashlight at the pursuing officers in an attempt to elude capture. The Court disagrees and finds that as alleged by the Plaintiff, Lunsford's actions were not objectively reasonable.

Initially, the Court finds that whether Carlson shot at Sheriff Lunsford is a disputed question of fact that this Court cannot resolve for purposes of summary judgment. The Sheriff maintains that he saw what he believed to be the Plaintiff shooting at him. In contrast, Carlson contends he did not have a weapon and did not shoot at Lunsford.[7] The Court notes that in addition to the parties'

---

[7] The Plaintiff's assertions are not under oath but because he is proceeding pro se, the Court will liberally construe his complaint and/or response as creating an issue of fact. See Owens v. Keeling, 461 F.3d 763, 775-76 (6th Cir. 2006).

dispute of this issue, no weapon was found during a search of the area following the Plaintiff's detention and arrest. Although Carlson was also wanted on felony warrants for evading arrest and reckless endangerment, these charges do not constitute sufficient bases for the use of deadly force. See Garner, 471 U.S. at 11, 105 S. Ct. 1694 (stating that it is unreasonable for an officer to "seize an unarmed, non-dangerous suspect by shooting him dead").

Concerning the Plaintiff's speeding in an effort to elude capture, the Supreme Court has stated that "because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case . . . ." Graham, 490 U.S. at 396, 109 S. Ct. 1865 (citing Garner, 471 U.S. at 8-9, 105 S. Ct. 1694); see also Brosseau, 543 U.S. at 200, 125 S. Ct. at 600 (2004) (stating that the result in fleeing-car cases is heavily dependent upon the facts of each individual case). Therefore, the Court must assess the facts of Lunsford's pursuit of Carlson in order to determine whether the Sheriff's actions were reasonable.

In this case, there is no evidence that Carlson rammed any of the pursuing officers' vehicles or attempted to do so. See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) (focusing on the suspect's use of his car as a battering ram to escape capture during earlier stages of the pursuit in finding the defendant officer's use of deadly force reasonable). While the Plaintiff did use the emergency lane during his flight, no evidence exists that he cut off or hit other vehicles, and it is not clear that he posed an immediate threat to those on the interstate. See Sigley v. City of Parma Heights, 437 F.3d 527, 536 (6th Cir. 2006); Cole v. Bone, 993 F.2d 1328, 1333 (8th Cir. 1993). Finally, Lunsford failed to warn Carlson before shooting at him. Although the Plaintiff was operating his vehicle approximately twenty miles-per-hour over the speed limit while shining a

flashlight at the pursuing officers, the Court finds that it was not reasonable for Lunsford to use deadly force under the specific facts of this case.  See Garner, 471 U.S. at 11, 105 S. Ct. 1694. Therefore, in view of the evidence in the light most favorable to the Plaintiff, the Defendant Sheriff's motion for summary judgment on the issue of his individual liability is DENIED and that based upon the facts alleged by the Plaintiff, Lunsford is not entitled to qualified immunity.

B.  Investigators Meggs and Bunn

Defendants Meggs and Bunn contend that they are entitled to judgment as a matter of law based on the doctrine of qualified immunity for their actions in removing the Plaintiff from his car and arresting him.

When the Plaintiff stopped his car, Meggs and Bunn pulled him from his car, causing his head to strike the ground.  The Plaintiff was wanted on two warrants and had just led the officers on a high-speed chase.  However, after Lunsford shot at Carlson, the Plaintiff pulled his vehicle to the side of the road and surrendered by placing his hands through the driver's side window.  Carlson alleges that after his surrender, the investigators intentionally dropped him on his head, causing injury thereto.  In the light most favorable to the Plaintiff, the court finds that as Carlson has contended, the actions of Meggs and Bunn were not objectively reasonable.  See Dubay v. Craze, 327 F. Supp. 2d 779, 782 (E.D. Mich. 2004) ("Striking an unarmed suspect about the face after he has voluntarily surrendered is objectively unreasonable and is an unequivocal violation of Plaintiff's Fourth Amendment rights.").  Thus, the motion for summary judgment of Investigator Meggs and Bunn based on the doctrine of qualified immunity is DENIED.

2.  Refusal to Provide Medical Care

Lunsford, Meggs, and Bunn contend they are entitled to summary judgment on the Plaintiff's

13

claim for denial of medical care while he was incarcerated.  They again assert no constitutional violation or that even if there was, they are entitled to qualified immunity.

The Eighth Amendment prohibits cruel and unusual punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321 (1991).  Under the United States Supreme Court decision of <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S. Ct. 285 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment."  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 105, 97 S. Ct. 285.  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." <u>Id.</u>

An Eighth Amendment claim consists of objective and subjective components.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S. Ct. 995 (1992); <u>Brooks v. Celeste</u>, 39 F.3d 125, 127-28 (6th Cir. 1994); <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992).  The objective component requires that the deprivation be "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834, 114 S. Ct. 1970.  The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." <u>Id.</u> The official's intent must rise at least to the level of deliberate indifference. <u>Id.</u>

Within the context of <u>Estelle</u> claims, the objective component requires that the medical need be sufficiently serious.  <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992).  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment Estelle violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in Farmer as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. 511 U.S. at 835-36, 114 S. Ct. 1970. Finally, a pre-trial detainees claim for lack of medical care is properly brought under the Fourteenth Amendment but analyzed under the same Eighth Amendment standards.   See Higgins v. Correctional Med. Srvs. of Ill., Inc., 178 F.3d 508, (7th Cir. 1999); Bond v. Gales, 2004 WL 2806024 (W.D. Tenn. Apr. 22, 2004); but see Sinclair v. City of Birmingham, 2005 WL 2448864 (E.D. Mich. Oct. 3, 2005) ("It is an open question in the Sixth Circuit as to whether a denial of medical care claim by an arrestee is to be analyzed under the Fourth Amendment standard of objective reasonableness or the Eighth/Fourteenth Amendment standard of 'deliberate indifference.'"). Initially, the Court will analyze the Plaintiff's claim of lack of medical care under the Eighth/Fourteenth Amendment standard.

In this case, it is undisputed that the individual Defendants had no further contact with the Plaintiff after he was transported to the Carroll County jail. It is also uncontradicted that although Carlson complained of a leg injury during his transport to the jail, he did not complain of a head injury. (Defs.' Statement of Undisputed Facts ¶¶ 24-25); (Pl.'s Resp. to Defs.' Statement of

15

Undisputed Facts ¶¶ 13-18).  In response, the Plaintiff claims that based upon the obvious and apparent nature of his head injury, it was incumbent upon Lunsford, Meggs, and Bunn to provide him immediate medical attention.  In support of this claim, Carlson has submitted three "booking" photographs taken of him upon his arrival at the jail.  (Pl.'s Resp. to Defs.' Mot. Summ. J., ex. IV). The Court has examined the photographs and notes that the pictures depict an injury on the Plaintiff's head near his hairline.  In one photograph, the Plaintiff has pulled his hair back to reveal the injury.  In another, the injury is obscured to a certain degree by Carlson's hairline.  In the third, Carlson's hair is parted such that it does not then cover the injury.

Based on the record before it, the Court finds that there is insufficient evidence that any of these Defendants acted with "deliberate indifference to [Carlson's] serious medical needs."  In this regard, the Court notes that the Plaintiff did not complain of his head injury to any of the Defendants and the Court cannot conclude from the photographs that Carlson's injury was either (1) clearly visible to the Defendants absent the Plaintiff moving his hair or (2) obviously the type of injury requiring immediate medical care.  Although the Plaintiff's complaint and response to the instant motion focus on the inactions of the Carroll County jailers to his repeated requests for medical attention, Carlson has not included in his suit any of these individuals.  As for those persons who are sued, the Plaintiff's claim for inadequate medical treatment against them cannot survive. Therefore, the Defendants' motion for summary judgment on this issue is GRANTED.

3.  Tennessee Constitutional Claims

The Defendants also assert that they are entitled to judgment as a matter of law on the Plaintiff's claims pursuant to the Tennessee Constitution because a violation thereof does not give rise to a private cause of action.

Tennessee does not recognize an "implied cause of action for damages based upon violations of the Tennessee Constitution." Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999) (citing Lee v. Ladd, 834 S.W.2d 323, 324 (Tenn. Ct. App. 1992)); see also Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1996) ("The plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution."). Accordingly, Plaintiff's claims for violations of the Tennessee Constitution are DISMISSED.

4. Punitive Damages.

The Defendants further aver that Plaintiff's punitive damages claim against them in their official capacities must be dismissed. It has been generally held that section 1983 plaintiffs cannot recover punitive damages against a municipality. See Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 79, 118 S. Ct. 481, 485(1997) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981)); Chonich v. Wayne County Cmty. Coll., 973 F.2d 1271, 1274 n. 3 (6th Cir. 1992), cert. denied, 512 U.S. 1236, 114 S. Ct. 2740 (1994). Accordingly, Plaintiff's claims for punitive damages are DISMISSED.

5. State Tort Law Claims

The Defendants contend this Court should decline to exercise its supplemental jurisdiction over Carlson's state law claims if the Court grants summary judgment. Because the Court has not granted summary judgment on all of the Plaintiff's claims, the motion to dismiss the remaining state law claims is DENIED.

CONCLUSION

Based on the foregoing, Defendant Lunsford's motion for summary judgment on the issue

17

of his individual liability based on excessive force is DENIED.  Defendants Meggs and Bunn's motion for summary judgment on the issue of individual liability based on excessive force is also DENIED. Defendants Lunsford, Meggs, and Bunn's motion for summary judgment on the issue of their individual liability for denial of medical care is GRANTED, as is their motion for summary judgment on the Plaintiff's claims arising out of alleged violations of the Tennessee Constitution and for punitive damages.  Finally, the Defendants' motion to dismiss the Plaintiff's state law claims is DENIED.

IT IS SO ORDERED this 8th day of February, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE